# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

ABEL SANDOVAL MENDEZ,  )
　　　　　　　　　　　　　　　　 )
　　　　　　　　　Petitioner,  )
　　　　　　　　　　　　　　　　 )
　　　v.　　　　　　　　　　　　 )　　　　　No. 26-03165-CV-S-BP
　　　　　　　　　　　　　　　　 )
TODD LYONS, in his official capacity as  )
Field Office Director of the Immigration and  )
Customs Enforcement and Removal Operations )
Kansas City Field Office, *et al.*,  )
　　　　　　　　　　　　　　　　 )
　　　　　　　　　Respondents.  )

## ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") even though he (1) had been released on bond and (2) had not violated his bond conditions. Pending is his Amended Petition for Writ of Habeas Corpus, in which he argues federal statutes and the Due Process Clause require that he be (1) released or (2) granted a bond hearing. As discussed more fully below, the Court concludes the Petition should be **GRANTED** and Petitioner should be released from custody.

## I.  BACKGROUND

Petitioner alleges (and Respondents do not dispute) the following facts. Petitioner is a citizen of Mexico who entered the United States without inspection in 2007 and has remained in the country ever since. (Doc. 9, ¶ 13.) In May 2011 he was taken into custody by Immigration and Custom Enforcement ("ICE") but, instead of being detained, he was released on bond. (Doc. 9, ¶ 21.) He has been picked up by ICE on at least two other occasions; each time, he was released on bond. (Doc. 9, ¶¶ 21-22.) At some point after 2007 he filed an application for cancellation of removal; a final hearing was scheduled approximately three years ago, but it was postponed and

has not been held.  (Doc. 9, ¶¶ 3, 23.)  In the meantime, he has attended all hearings he has been required to attend.  (*See* Doc. 9, ¶¶ 2, 23.)  And, while released on bond, he has established a life in this country: he lives with his partner, has five children who were born in this country, and owns a small business in Indianapolis, Indiana.  (Doc. 9, ¶¶ 19-20.)

In February 2026, Petitioner was pulled over for speeding; he was then turned over to ICE's custody, (Doc 9, ¶ 24), and has been detained since.  There has been no argument or suggestion that he violated the terms of his bond; he has nonetheless been detained and has not been considered for release (on either his original bond or a new bond) because the Department of Homeland Security and the Executive Office for Immigration Review now takes the position that Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1225.  This prompted Petitioner to seek habeas relief.

The Amended Petition contains two Counts.  Count I asserts Petitioner's detention is governed by 8 U.S.C. § 1226, which permits him the opportunity to seek bond (as opposed to 8 U.S.C. § 1225, which does not).  Count II asserts that if Petitioner's detention is governed by 8 U.S.C. § 1225, then application of the automatic detention provision to him and his circumstances violates the Due Process Clause.  Respondents argue that Petitioner is not entitled to relief, and the Court resolves the parties' arguments below.

## II.  DISCUSSION

### A.  Jurisdiction

Respondents argue that 8 U.S.C. §§ 1252(e)(3) deprives this Court of jurisdiction to consider Petitioner's claims.  The Court disagrees.

Section 1252(e)(3)(A) specifies that "[j]udicial review of determinations under section 1225(b) . . .  and its implementation is available in an action instituted in the United States District

Court for the District of Columbia." However, because of § 1252(e)(3)'s title—"Challenges on Validity of the System"—it has been construed as relating to challenges to statutes and regulations, not individualized decisions. *E.g.*, *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025) (citing *Munoz Materano v. Arteta*, 2025 WL 2630826, at *10 (S.D.N.Y. Sept. 12, 2025)); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 559 (2022) (describing § 1252(e)(3) as "channeling review of the 'implementation' of specified provisions into the U. S. District Court for the District of Columbia."); *Grace v. Barr*, 965 F.3d 883, 893 (D.C. Cir. 2020) (discussing the difference between the review provisions in § 1252(a)(2) and § 1252(e)(3)). This understanding is also consistent with the deadline for bringing such claims, which must be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B).

Respondents argue that, in light of the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), Petitioner's detention is governed by 8 U.S.C. § 1225, which means bond is categorically not permitted. They then reason that any constitutional argument Petitioner makes must be a facial attack on § 1225, which means § 1252(e)(3) deprives the Court of jurisdiction to hear it. However, as discussed below, while § 1225 (and not § 1226) applies, Petitioner's Due Process argument is not a facial attack on § 1225 but rather an individualized challenge to its application in Petitioner's circumstances. Therefore, § 1252(e)(3) does not deprive the Court of jurisdiction.

### B.  Count I

As stated earlier, Count I requires the Court to determine whether Petitioner's detention is governed by § 1225 or § 1226. The difference is important because § 1225(b)(2)(A) provides that "an alien who is an applicant for admission . . . shall be detained" if it is determined that he "is not

clearly and beyond a doubt entitled to be admitted[.]"  In contrast, § 1226 would permit Petitioner to be considered for bond.

In *Avila*, the Eighth Circuit held that a person in Petitioner's circumstances is an "applicant for admission," so his detention is governed by § 1225.  The Amended Petition acknowledges this point and makes clear that Count I is being asserted solely to preserve the issue.  (Doc. 9, ¶¶ 31-32.)  Therefore, based on *Avila*, the Court denies Petitioner relief on Count I.

### C.  Count II

As Petitioner explains, he is not challenging the statutory or constitutional authority under § 1225 to automatically detain inadmissible aliens without allowing them to be considered for release on bond.  (Doc. 10, pp. 3-4; Doc. 15, pp. 1, 3.)[1]  Instead, he is claiming that *his* Due Process rights are violated if § 1225 is applied to automatically detain him because he *was* released on bond and did not violate the bond's conditions.  As he frames the issue in his Traverse, "[e]ven if § 1225(b)(2)(A) authorizes detention in the first instance, it does not answer the constitutional question presented here: what process is required before the government may re-detain someone who has already been released and has relied on that release for years[?]"  (Doc. 15, p. 3.)  In short, Petitioner is arguing that § 1225 is unconstitutional *as applied to* a person who (1) could have been detained but instead was released on bond (2) has not violated the conditions of bond, and (3) has lived in the country for an extended period of time.  The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation omitted).  While "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *id*. at 522; *see also id*. at 526; *Banyee v. Garland*, 115 F.4th 928, 931-32 (8th Cir. 2024), the Due Process

---

[1] All page numbers for documents filed with the Court are those generated by the CM/ECFY system.

protections granted to aliens are not limited to simply requiring Respondents to follow statutes. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *United States v. Berdugo-Urquidez*, 494 U.S. 259, 271 (1990). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause, *Zadvydas*, 533 U.S. at 690, and it cannot be denied to anyone—including aliens—without appropriate process.

Having determined that *some* process is due, the next task is to determine *what* process is due. This inquiry involves balancing various considerations, including: "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). In the circumstances of this case, the risk of erroneous deprivation does not appear to be a factor; the focal point of the analysis is the balance between the liberty interest at stake for the individual and the Government's interest in denying that liberty interest.

In many circumstances related to the process afforded to aliens, Congress's assessment of the balance (as expressed through statutes) is sufficient. *See Banyee*, 115 F. 4th at 933 (citing *Demore v. Kim*, 538 U.S. 510, 528 (2003)). For instance, *Demore* addressed § 1226(c), which provides that a lawful permanent resident who becomes deportable because he committed crimes shall be detained without being considered for release on bond. The Supreme Court held "that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal

5

proceedings." *Demore*, 538 U.S. at 513. *Banyee* reiterated this point with respect to the same statute. *Banyee*, 115 F.4th at 933. And § 1225(b)(2)(A)—which, as stated earlier, Petitioner is not challenging on its face—could be justified by a concern that aliens who are "not clearly and beyond a doubt entitled to be admitted" may not appear for subsequent hearings. This rationale would justify automatically detaining those who (1) seek admission immediately upon arriving at the border or (2) cross the border unlawfully and without notice and are found by authorities later.

But Petitioner's circumstances are different: the Government permitted Petitioner to post a bond and remain free. The Government did not have to grant Petitioner release on bond,

> [b]ut when the Government decides to release an individual on bond, it creates an implicit promise that their liberty will be revoked only if they fail to live up to the conditions of release. . . . To revoke that promise arbitrarily—without process and with no allegation of changed circumstances or violation by Petitioner—is fundamentally unfair.

*Singh v. Mullin*, 2026 WL 1021846, at *4 (N.D. Iowa Apr. 15, 2026) (quotation omitted; cleaned up). Thus, numerous courts have held that when the Government grants bond, it cannot change its position and detain the alien—even if bond did not have to be granted in the first instance—absent a change in circumstances. *E.g.*, *Sandhu v. Mullin*, 2026 WL 1146643, at *3-4 (D. Neb. Apr. 28, 2026); *Aleski M. v. Warden, Lawrence Cnty. Jail*, 2026 WL 1133615, at *4-6 (D.S.D Apr. 27, 2026); *Abbas v. Schneider*, 2026 WL 1079292, at *7-8 (S.D. Iowa Apr. 17, 2026); *Singh*, 2026 WL 1021846, at *4; *see also Jesus Alejandro G. A. v. Blanche*, 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) ("Courts have recognized the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their continued liberty." (quotation omitted)).[2] This conclusion arises from the larger

---

[2] The Court has limited its citations to district courts in the Eighth Circuit. There are numerous decisions from other district courts around the country reaching the same conclusion.

6

recognition that liberty interests are not created only by the Constitution or statutes; they can also arise from legitimate expectations or interests created by policies and practices. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). And in a similar context (involving a convicted person released on parole), the Supreme Court observed:

> The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. . . . We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court therefore concludes Petitioner has a liberty interest in being out on bond.

The next question is: what is Respondents' interest in withdrawing the bond previously granted to Petitioner? As stated earlier, Respondents do not contend Petitioner violated the terms of his release, nor does it identify any change in circumstances that might justify revoking his bond. The only justification for Respondents' actions seems to be that it now believes he should not be released on bond. This change in the understanding of the interplay between § 1225 and § 1226, *see Avila*, 170 F.4th at 1140 (Erickson, J., dissenting), is not sufficient to justify withdrawing the liberty interest the Government already created by granting Petitioner bond.[3]

Finally, the Court addresses the appropriate remedy for the liberty deprivation discussed above. Petitioner has been detained even though he was released on bond; this deprivation is not remedied simply by giving him a bond hearing because he already had been released on bond. The

---

[3] The Court's decision is thus limited to an alien who was released on bond and has not been alleged to have violated its conditions. The Court expresses no opinion on the constitutionality of § 1225's application to other circumstances, including to aliens who are detained at the border upon their initial entry or after having been discovered in the country after unlawfully entering. The Court also expresses no opinion as to what "changed circumstances" might justify revoking Petitioner's bond (because Respondents have not suggested any exist).

appropriate remedy is for Petitioner to be released under the same bond conditions that existed when he was detained.

### III.  CONCLUSION

The Petition for Writ of Habeas Corpus is **GRANTED**.  Respondents are **ORDERED** to release Petitioner forthwith.  Respondents are also **ORDERED** to return any property (including documents) taken from Petitioner to him or to his attorney within seven (7) calendar days.

**IT IS SO ORDERED.**


/s/ Beth Phillips
BETH PHILLIPS, JUDGE
**DATE**:  June 9, 2026                    UNITED STATES DISTRICT COURT

8